ALAN M. KEMP ET AL. *v.* ELLINGTON PURCHASING CORPORATION ET AL.
(4085)

HULL, BORDEN and DALY, Js.

Argued November 13—decision released December 30, 1986

*Sanford J. Plepler,* with whom, on the brief, was *Debra C. Ruel,* for the appellants (plaintiffs).

*John W. Lemega,* with whom, on the brief, was *George D. Royster, Jr.,* for the appellees (defendants).

BORDEN, J. The plaintiff[1] appeals from a judgment rendered for the defendants[2] after a jury verdict finding the issue of liability for the defendants. The principal issue is whether the trial court erred in excluding certain testimony of the plaintiff's expert witness, pursuant to the ruling of this court in *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 476 A.2d 1074 (1984). We find no error.

Certain facts are not in dispute: In April, 1981, the plaintiff was part of a large group of people who were being photographed at a party at the Ellington Ridge Country Club. They were standing on a wooden stairway, which led from an upper patio to the swimming pool area, when the stairway collapsed.

The plaintiff's principal claim is that the court erred by prohibiting his expert engineering witness, Irving W. Glater, from testifying as to whether the defendants had constructive notice of the condition of the stairway prior to its collapse. The plaintiff claims that the court abused its discretion and misapplied *Sturdivant* v. *Yale-New Haven Hospital,* supra. We disagree.

---

[1] We refer herein to the named plaintiff, Alan Kemp, as the plaintiff. His wife, Mona Kemp, is a coplaintiff asserting derivative claims for loss of consortium and for emotional distress from witnessing her husband's injuries. She is also an appellant.

[2] The named defendant, Ellington Purchasing Corporation, was the owner of the premises involved in this case, which were leased to the codefendant, the Ellington Ridge Country Club.

The plaintiff's claim arises in the following procedural context. In April, 1982, the plaintiff sued the defendants. In October, 1982, the plaintiff responded to an interrogatory of the defendants by disclosing that he had retained Glater as an expert witness and that Glater had not yet completed his investigation or rendered a report to the plaintiff. In January, 1983, the plaintiff sent Glater's three page report to the defendants. The report disclosed Glater's conclusions as to how the stairway collapsed, the cause of the collapse and the nature of the design defect in the stairway. The report did not mention whether any deterioration of the stairway would have been discernible on inspection.

Prior to trial, the defendants deposed Glater. During the deposition, the following colloquy took place between the defendants' counsel and Glater:

"Q. And in your report, I take it you were just asked to determine why the railing fell down or why the stairway fell down?

"A. I was asked to examine and—I was asked to examine the surviving artifacts apart to determine the cause of failure if possible.

"Q. And that's all you were asked to determine?

"A. Yes.

"Q. And that's all you did determine?

"A. To the best of my ability."

At trial, Glater testified that the primary cause of the collapse of the stairway was deterioration of the wood and metal fasteners due to insect damage and moisture, and that this deterioration had occurred over a period of years. The plaintiff then asked Glater whether this condition "was discoverable by an inspection." The defendants objected. The court sustained the objection, relying on *Sturdivant,* and the plaintiff excepted.

At the hearing on the plaintiff's motion to set aside the jury's verdict for the defendants, the plaintiff confined his argument to this ruling. In denying the motion, the trial court stated that it did not believe that the plaintiff intentionally misled the defendants. It explained its ruling, however, by emphasizing that Glater's deposition testimony was that he was only retained to determine the cause of the collapse, and that the defendants were thereby led to believe that he, as an expert witness, would not be testifying as to constructive notice. The court also stated that, if Glater's deposition testimony had been inaccurate, it was incumbent on the plaintiff to correct the misstatement and alert the defendants to the plaintiff's intention to use him as a witness on the issue of constructive notice.

*Sturdivant* v. *Yale-New Haven Hospital,* supra, was a medical malpractice case in which the plaintiff informed the defendants prior to trial that she had not retained an expert. During the jury selection process, the plaintiff identified her expert, whom she had previously consulted. Id., 104. The plaintiff then responded to the defendants' interrogatories by defining the scope of the expert's testimony as the standard of care and departure therefrom. Id., 104–105. The defendants deposed the expert and limited their inquiry to the disclosed subject matter. Id., 104. The plaintiff, at the deposition, did not indicate that the witness would be offered for any issue beyond the standard of care. At trial, the plaintiff sought to elicit testimony from the expert on the issue of causation. The trial court precluded the plaintiff from doing so because causation was not within the disclosed subject matter.

On appeal, the plaintiff argued that she had not formally retained the expert until jury selection began. Id. We rejected that argument, noting that the expert had been consulted earlier and that he had reviewed the file. We characterized the plaintiff's offered distinc-

tion between formal and informal retention of an expert as a "tactical subterfuge" and a " 'cat and mouse' " game; id., 106; and further noted that "[t]he rules of discovery are designed to make a ' "trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." ' " Id., quoting *United States* v. *Procter & Gamble,* 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). We also found support for the trial court's action in Practice Book § 231 (d), which authorizes the sanction of exclusion of evidence to be imposed against a party who has failed to answer interrogatories. *Sturdivant* v. *Yale-New Haven Hospital,* supra, 106–107. We measured the trial court's action against the familiar standard that, in deciding whether to impose the sanction of exclusion of expert testimony, the trial court has a wide discretion, to which great weight and every reasonable presumption of correctness should be afforded, and that the ultimate issue is whether the court could have reasonably reached its conclusion. Id., 107–108. We concluded that the court's discretion had not been abused. Id., 108.

We have since had occasion to apply the principles of *Sturdivant* v. *Yale-New Haven Hospital,* supra. See *Zimny* v. *Cooper-Jarrett, Inc.,* 8 Conn. App. 407, 422–27, 513 A.2d 1235 (1986); *Hartford* v. *Anderson Fairoaks, Inc.,* 7 Conn. App. 591, 598–601, 510 A.2d 200 (1986); *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 517–19, 509 A.2d 552 (1986); *Alpha Crane Service, Inc.* v. *Capital Crane Co.,* 6 Conn. App. 60, 64–66, 504 A.2d 1376, cert. denied, 199 Conn. 808, 508 A.2d 769 (1986). In each of these cases, we reiterated the broad discretion vested in the trial court with regard to the delicate decision of whether to impose the sanction of evidentiary exclusion, and in the only case in which we found an abuse of discretion, based primarily on the fact that the trial court made a ruling and

then failed to enforce it; *Hartford* v. *Anderson Fairoaks, Inc.,* supra; we noted the trial court's "broad umbrella of discretion." Id., 600–601.

Applying these principles to the facts of this case, we cannot conclude that the trial court abused its discretion. *Sturdivant* and its progeny do not say that the sanction of exclusion must be applied whenever there is a discrepancy between the previously disclosed subject matter of an expert witness' testimony and his proffered testimony at trial. They say only that the trial court must, as it did in this case, exercise its discretion in deciding whether to impose that sanction, to impose a less drastic sanction, or not to impose any sanction at all. That is a decision left to the trial court's best judgment, subject on appeal only to the test of abuse of discretion.

In reviewing such a decision, we do not sit as a second trial judge. We do not decide whether we would have made the same decision. Our sole task is to determine whether the trial judge who did sit could have reasonably concluded as he did. In this case, although we do not have the benefit of a written memorandum of decision of the trial court on the plaintiff's motion to set aside the verdict, we do have the trial court's remarks explaining the reasoning behind its decision to impose the exclusionary sanction. That reasoning focused on the fact that Glater's deposition testimony led the defendants to believe that he would only testify as to the causes of the stairway collapse, and that the plaintiff did not thereafter take the opportunity to clarify that Glater would also testify as to the issue of constructive notice. Although the facts of this case are not as egregious as those of *Sturdivant,* it is clear that the trial court did exercise its discretion, and we cannot conclude that the trial court could not "reasonably conclude as it did." *Sturdivant* v. *Yale-New Haven Hospital,* supra, 108.

The plaintiff raises three additional claims of error: (1) that the ruling on Glater's testimony amounted to a directed verdict and deprived the plaintiff of his right to a jury trial; (2) that the court erred by refusing to charge on the doctrine of res ipsa loquitur; and (3) that the court's charge, which referred to the issue of whether the number of people posed for the photograph on the stairway was a lawful use of the stairway, submitted an extraneous issue to the jury. These claims require little discussion. The first is disposed of by our conclusion that the court's ruling was within its wide discretion. The second and third were not presented to the court on the plaintiff's motion to set aside the verdict. Thus, a review of them is limited to determining whether they involved plain error. *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 397, 499 A.2d 64, cert. granted, 198 Conn. 802, 501 A.2d 1213 (1985). Suffice it to say, that upon review of the trial court's jury charge, we do not find that these instructions involved plain error.

There is no error.

In this opinion the other judges concurred.